IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CATHY VIGNERI, and RAY VIGNERI, | ) | |
| Plaintiffs, | ) | 8:05CV68 |
| v. | ) | |
| US BANK NATIONAL ASSOCIATION, | ) | MEMORANDUM AND ORDER |
| Defendant and Third Party Plaintiff, | ) | |
| v. | ) | |
| NATIONWIDE CREDIT, INC., | ) | |
| Third Party Defendant. | ) | |

Before the court is U.S. Bank National Association's (U.S. Bank) motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). Filing No. 57. Plaintiffs filed an amended complaint in this case alleging that U.S. Bank violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, by making an allegedly unauthorized transfer from the plaintiffs' checking account to Nationwide Credit, Inc. (Nationwide), a debt collection agency. Filing No. 30. Plaintiffs also bring claims for conversion and violations of the Nebraska Uniform Commercial Code § 3-401. *Id.* Plaintiffs have requested actual damages in the amount transferred and statutory and treble damages under the EFTA. U.S. Bank challenges the EFTA claim arguing that the transfer in question was not an electronic fund transfer, hence the Act does not apply. The court has carefully reviewed the record, and in particular the indices of evidence, as well as the relevant case law and the court concludes that U.S. Bank's motion for summary judgment on the EFTA claim should be granted.

**Standard of Review**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Therefore, if the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.*  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the non-moving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**Background**

The plaintiffs are residents of Omaha, Nebraska, and are the named account holders on a checking account held by the defendant, U.S. Bank, a corporation organized and existing under the laws of Minnesota and doing business in the State of Nebraska, and elsewhere. Nationwide is a debt collector and a corporation organized and existing under the laws of Georgia and doing business in the State of Nebraska. Nationwide, at all relevant times, collected on a debt owed by plaintiffs to American Express. Filing No. 59, Ex. B, September 30, 2004, letter from plaintiffs to Nationwide.

In April of 2004, plaintiffs entered into a verbal agreement with Nationwide authorizing Nationwide to withdraw the amount of $100.00 per month from plaintiffs' checking account held by U.S. Bank. Filing No. 59, Ex. C, plaintiffs' Complaint against Nationwide, Case No. 8:04CV505, U.S. District Court for the District of Nebraska. Following creation of the agreement, Nationwide initiated a $100.00 debit on plaintiffs' account in May, June, July, and August of 2004. Each month the plaintiffs received a letter from Nationwide stating that the plaintiffs' "postdated" check for $100.00 would be

deposited on the 24th of the month. Mary K. Whitney, a U.S. Bank manager, testified in her deposition that Nationwide initiated each $100.00 transfer with a paper draft deposited at a Bank of America branch. Filing No. 59, Ex. E, Rule 30(b)(6) Dep. of Mary K. Whitney; Ex. F, Paper draft, dated September 24, 2004, submitted to U.S. Bank by Nationwide for payment on plaintiffs' account.

Sometime in August, Nationwide contacted plaintiffs and informed them that American Express wanted the debt resolved. Filing No. 59, Ex. B. Plaintiffs maintain that at no time did they authorize Nationwide to withdraw more than $100.00. Filing No. 86, Ex. 1, Affidavit of Cathy Vigneri. Nevertheless, on August 24, 2004, Nationwide withdrew $1,074.88 from plaintiffs' account. Like the previous withdrawals, Nationwide documented the debit in question with a paper draft containing the routing number and account number that corresponded with plaintiffs' account. Filing No. 59, Ex. F. In the signature line, "Nationwide Credit, Inc." had been typed, immediately followed by language which stated "By Nationwide Credit, Inc. as authorized signatory for RAY VIGNERI." *Id.*

On September 30, 2004, the plaintiff, Cathy Vigneri, went to U.S. Bank's 8800 West Center Road branch and complained to a personal banker that an unauthorized transfer from her account had been made. Filing No. 86, Ex. 1. The personal banker accessed the plaintiffs' account information at a computer terminal, examined the withdrawal, and informed the plaintiff that there was nothing that U.S. Bank could do. *Id.* The plaintiffs also sent a letter of complaint to U.S. Bank on October 1, 2004, but U.S. Bank conducted no further investigations. *Id.*

Plaintiffs brought suit against Nationwide on October 13, 2004, claiming violations of the Fair Credit Reporting Act, 15 U.S.C. § 1692, and the Nebraska Consumer Protection

Act arising from the September 24, 2004, withdrawal. Filing No. 59, Ex. C. Plaintiffs settled their lawsuit against Nationwide in exchange for the $1,074.88 debited from the plaintiffs' account and $2,673.44 representing compensation for statutory damages, attorney fees and costs as well as out-of-pocket expenses. Filing No. 59, Ex. L, Mutual Release and Settlement Agreement between plaintiffs and Nationwide. Nationwide further agreed to cease all collection action with regard to the debt owed by plaintiffs. *Id.*

**Discussion**

U.S. Bank argues that the EFTA does not apply to the withdrawal because section 1693(a)(6) excepts from the statute "checks, drafts or similar paper instruments." U.S. Bank contends that the withdrawal by Nationwide was not an electronic fund transfer because Mary K. Whitney, Manager–Retail Support Department of U.S. Bank, researched the transaction in U.S. Bank's computer system and could see a copy of a paper draft which she testified would not be possible for a transaction initiated by an electronic fund transfer. Filing No. 59, Ex. E, Whitney Dep. at 30:6-8, 19-24; 43:16-22 and 45:11-15. According to Whitney, the paper draft also contains Bank of America's routing information and various other coding and categorization symbols indicating that Nationwide presented the draft to Bank of America and Bank of America subsequently processed it through the Federal Reserve. *See Id.* U.S. Bank further argues that such paper drafts are not created in order to memorialize electronic fund transfers. *Id.* at 68:6-10.

Plaintiffs argue that it is their belief that for purposes of documentation, U.S. Bank reduced the withdrawal to paper form at some point after initiating the transaction electronically. Filing No. 86, Ex. 1, Affidavit of Cathy Vigneri & Ex. 2, Affidavit of Ray Vigneri. Plaintiffs offer no facts or law in support of this assertion. Plaintiffs also argue that

5

the testimony of U.S. Bank's employee, Mary Whitney, is merely a biased opinion and does not qualify as expert testimony, and, therefore, it is insufficient evidence to support U.S. Bank's motion for summary judgment.  U.S. Bank argues that plaintiffs' affidavits should be disregarded because plaintiffs have no foundation for their opinion that Exhibit "F" is a memorialization of an electronic fund transfer.  *See Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004) (granting summary judgment because affiant failed to lay the most basic foundation for statements made in her affidavit and failed to raise a genuine issue of material fact).

U.S. Bank alleges that the withdrawal is not an electronic fund transfer.  The EFTA states that:

> the term "electronic fund transfer" means any transfer of funds, **other than a transaction originated by check, draft, or similar paper instrument**, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693(a)(6) (emphasis added).  The dependency of electronic fund transfer systems on computers and the resulting absence of any human contact with the transfer motivated Congress to pass the EFTA, as well as the lack of a written record.  See H.R.Rep. No. 1315, 95th Cong., 2d Sess. 2, 4 (1978); *quoted in Kashanchi v. Tex. Commerce Med. Bank*, 703 F.2d 936, 940 (5th Cir. 1983) (holding that a withdrawal initiated through telephone conversation is not covered by the Act even though said withdrawal allegedly was not made by the plaintiff).  Impersonal transactions are much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods.  *Id.* at 2.

6

There is an essential difference between electronic fund transfer systems and personal transfers by phone or by check. *Kashanchi*, 703 F.2d at 941. The court in *Kashanchi* explained that:

> when someone makes an unauthorized use of an electronic fund transfer system, a financial institution often has no way of knowing that the transfer is unauthorized. For example, in order to make a transfer at an automatic teller machine, a person need only possess the machine card and know the correct personal identification number. The computer cannot determine whether the person who has inserted the card and typed in the magic number is authorized to use the system.

*Id.* at 941-42. The court agrees with U.S. Bank and finds that Nationwide personally presented a paper draft on the plaintiffs' account to a teller at Bank of America and additionally, that upon receipt by U.S. Bank, such a draft is typically processed by an employee in one of the bank's several item processing centers or by mechanical means. *See* Filing No. 59, Ex. E, Whitney Dep. at 30:6-8, 19-24; 55:2-10; 31:4-22. Typically, a paper draft requires human contact to be processed and creates a written record of the transaction.

Whitney[1] testified in her deposition that she knew the withdrawal had been initiated by a paper draft because when she viewed the online history for the transaction, she saw documentation of the draft which would not have been possible had the withdrawal been initiated electronically. *Id.* at 66:3-9  In addition, the employee saw no captioned description in the online history containing information such as the payee's name. *Id.* at 65:11-21. Such a description normally is transferred via a computer file when a transaction is initiated electronically and, thus, is absent for all paper drafts. *Id.* The employee saw

---

[1] The plaintiffs contend that Whitney is not an expert and should not be permitted to testify. However, the court finds that Whitney, based on her experience as a manager of the Retail Support Department of U.S. Bank, is qualified to testify to the facts related to her employment. Her testimony is competent in this regard.

7

no description, only a "tran code" (sequence number, check number, amount, date processed) which further indicated that the withdrawal originated from a paper draft as electronic fund transfers and paper drafts are given unique sequence numbers because they are referenced in two separate systems. *Id.* at 65:19-25; 66:1-15.

Whitney also testified that she examined the back of the paper draft and found that it is printed with "spray numbers" (sequence numbers that are printed on the back of an item when it is processed) indicating that it was processed by Bank of America and U.S. Bank, and she identified the Bank of America stamp printed there as well. *See id.* at 28:22-25; 29:1-4. She testified that she knows of no way that anyone other than Bank of America could stamp an item and that an item would have to have been in paper form to be stamped. *Id.* at 67:17-25; 68:1; 46:16-24. Further, Whitney testified that she examined the plaintiffs' monthly statement and found that the withdrawal is listed under the section titled "checks presented conventionally," not under the section titled "other withdrawals," which is where electronic fund transfers are listed. *Id.* at 76: 19-25; 77:1-15.

Prior to the September 24th withdrawal, Nationwide had debited the plaintiffs' account on four previous occasions using the exact same procedures, withdrawing $100.00 in May, June, July and August of 2004. *Id.* at 40:10-25; 41:1-14. The plaintiffs also received a letter each month informing them that a "postdated" *check* would be deposited on the 24th of the month. Filing No. 59, Ex. B, September 30, 2004 Correspondence from plaintiffs to Nationwide.

8

After carefully reviewing the arguments and evidence submitted by the parties, the court concludes that the motion for summary judgment on the EFTA claim[2] should be granted. Plaintiffs have provided no specific, material facts supporting their belief that the withdrawal is an electronic fund transfer. U.S. Bank has established that a paper draft initiated the transaction, thereby providing a written record of the withdrawal and necessitating human contact in order for the withdrawal to be processed. Such an ordinary transfer, by definition, does not pose a serious threat to the consumer nor warrant the coverage of the Electronic Fund Transfer Act.[3]

THEREFORE, IT IS ORDERED that the defendant's motion for summary judgment, Filing No. 57, is granted. A separate judgment shall be entered in conjunction with this Memorandum and Order.

DATED this 6th day of July, 2006.

BY THE COURT:

s/Joseph F. Bataillon
United States District Judge

---

[2] Because the court is dismissing the EFTA claim, the remaining state law claims are dismissed without prejudice. These claims, the conversion claim and the Nebraska UCC claim, are state law claims and are here based on supplemental jurisdiction. The court in its discretion will dismiss the state law claims without prejudice. *See Packett v. Stenberg*, 969 F.2d 721, 726-27 (8th Cir. 1992) (*quoting* 28 U.S.C. § 1367(c)).

[3] Because the court concludes that the disputed transaction is not an electronic fund transfer there is no need to address U.S. Bank's additional defenses regarding the existence of a signed release and the applicability of the doctrine of waiver and estoppel.

9